UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Dennis D. Scanlon, Jr., Terrance D. Scanlon,
and Richard D. Scanlon,

      Plaintiffs,

v.

Northwest Mortgage, Inc., and National
City Bank of Minneapolis,

      Defendants.

**Memorandum of Law & Order**
**Civil No. 11-3128 (MJD/TNL)**

---

James George Roban, Roban Law Office, Counsel for Plaintiffs.

D. Charles Macdonald, Ellen B. Silverman, and Erin L. Hoffman, Faegre & Benson LLP, Counsel for Defendant Northwest Mortgage, Inc.

---

## I.    Introduction

This matter is before the court on Plaintiffs' Motion for a Temporary Restraining Order. [Docket No. 7.] The Court heard oral argument on November 22, 2011. The Court subsequently referred this matter to the Magistrate Judge for settlement discussions, but those discussions were not fruitful. Concluding that Plaintiffs have not met the requirements for injunctive relief, the Court denies their motion.

1

**II.     Background**

In 1970, Dennis Scanlon, Sr., ("Scanlon Sr.") and his wife bought a house in St. Paul, Minnesota ("Property"). When his wife passed away in 1988, Scanlon Sr. became the sole owner of the Property. In April 1996, National City Bank of Minneapolis ("National City") gave Scanlon Sr. a loan for $44,500.00 secured by a mortgage on the Property ("mortgage"). The loan and mortgage were assigned to Defendant Norwest Mortgage, Inc., now part of Wells Fargo Bank, N.A.

In May 1996, Scanlon Sr. obtained a second loan from National City in the amount of $10,000, secured by a second mortgage on the Property. In November 2007, the successor to National City, M&I Marshall & Ilsley Bank, recorded a certificate confirming that this second mortgage had been satisfied.

When Scanlon Sr. died intestate in August 2010, the Property automatically passed to his sons—Plaintiffs Dennis D. Scanlon, Jr. ("Scanlon Jr."), Terrance D. Scanlon, and Richard D. Scanlon. See In re Beachside I Homeowners Ass'n, 802 N.W. 2d 771, 774 (Minn. App. 2011) (explaining that Minnesota law provides "automatic devolution of interest in property to the heirs of a person who dies intestate without the need for the heirs to be determined by a probate

court"). It is undisputed that each of the plaintiffs was entitled to a one third interest in the Property upon their father's passing.

Scanlon Jr. had lived at the Property since birth and had been caretaker to his mother and father. After his father's death, Scanlon Jr. continued to make payments on the mortgage for the months of September, October, November, and December 2010. According to Scanlon Jr., he contacted Wells Fargo in January 2011 to inquire about the mortgage. He alleges that Wells Fargo told him that "since [he] was not an Owner of the homestead, [Wells Fargo] would not accept payments from [him]." (Scanlon Jr. Aff. [Docket No. 12] ¶ 13.) Scanlon Jr. stopped making payments at that time. Neither he nor his brothers made efforts to assume the mortgage or make additional payments.

Wells Fargo began default and foreclosure proceedings. Plaintiffs allege that they did not receive notice of default from Wells Fargo. Scanlon Jr. acknowledges that he received a foreclosure notice from Wells Fargo, but such notice was not sent to his brothers.

In an effort to stop the foreclosure proceedings, Plaintiffs initiated the instant action in state court. Wells Fargo removed the case to this Court. A foreclosure sale was scheduled for October 29, 2011, but the sale was first

postponed until November 29, 2011 and then subsequently postponed for an additional sixty days. Plaintiffs have moved this Court for temporary injunctive relief to prevent the foreclosure sale. One day before the Court heard argument on Plaintiffs' motion, Plaintiffs filed an Amended Complaint. [Docket No. 25.] The Amended Complaint alleges that the notice provided by Wells Fargo was deficient under Minnesota law and that the law providing for foreclosure by advertisement is unconstitutional.

### III. Discussion

#### A. Standard

To obtain preliminary injunctive relief, Plaintiffs must show a likelihood of irreparable harm in the absence of the injunction. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The Court also considers the balance between such harm and the injury that granting the injunction will inflict on other parties, Plaintiffs' likelihood of success on the merits, and the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

#### B. Likelihood of Irreparable Harm

Under Minnesota law, a defaulting mortgager can redeem foreclosed upon property within six months of a foreclosure sale. Minn. Stat. § 580.23, subd. 1(a).

"The title of the mortgagor does not pass by the foreclosure till his right of redemption expires." State v. Zacher, 504 N.W. 2d 468, 471 (Minn. 1993) (citations omitted). Thus, even if the foreclosure sale goes forward, Plaintiffs would have another six months to redeem before Wells Fargo could take title to the Property.

Plaintiffs argue that they would suffer irreparable harm should the foreclosure sale proceed. In particular, they note that they would have to pay attorney fees to redeem their homestead and other statutory costs. They also argue that the foreclosure sale may limit their opportunity to secure loans in the future, and that they will be required to sell the Property at a "Fire Sale" price in order to satisfy the mortgage. Plaintiffs also argue that allowing the sale to proceed without proper notice would violate their due process rights and deprive them of their inheritance.

The Court concludes that the harms noted by Plaintiffs are not irreparable. Even after the foreclosure sale, they may continue to possess and live in the house until the end of the six-month redemption period. Plaintiffs will retain title during that period, and they will be able to redeem during that period. As Wells Fargo notes, if Plaintiffs are correct that the foreclosure is improper, they

may have the sale declared void. And, if their claims are still pending at the end of the six-month redemption period, Plaintiffs will have a right to "protectively redeem" the Property under Minn. Stat. § 580.28.

<u>Bazil v. Wells Fargo Bank, N.A.</u>, Civ. No. 11-1206, 2011 WL 2619095, at *1 (D. Minn. July 1, 2011), concerned a motion nearly identical to the one at issue here. The Court reasoned that a preliminary injunction to prevent a foreclosure sale was premature because "no irreparable injury by loss of title to residential property" would occur until the end of the six-month redemption period. <u>Id.</u> Here, as in <u>Bazil</u>, any irreparable harm would occur six months from the foreclosure sale, the point at which Plaintiffs could lose title to the Property.

**C.  Likelihood of Success on the Merits**

Plaintiffs' claims are rooted in two contentions: First, they argue that the Wells Fargo did not provide them sufficient notice of default and foreclosure. Second, they argue that Minnesota's foreclosure by advertisement rules are unconstitutional.[1] The Court concludes that neither of these contentions is likely to succeed on the merits.

---

[1] In their original complaint and in their memorandum in support of the instant motion, Plaintiffs also argued that Wells Fargo had failed to provide notice to a third party and that Wells Fargo had not filed a required power of attorney

### 1. Sufficiency of Notice to Plaintiffs

Plaintiffs argue that Wells Fargo provided insufficient notice because default notice was not sent to any of the Plaintiffs, and notice of the foreclosure was not sent to Terrance D. Scanlon and Richard D. Scanlon.

#### a. Default Notice

Minnesota law provides:

> A mortgage evidencing a conventional loan shall contain a provision whereby the lender, if it intends to foreclose, agrees to give <u>the borrower</u> written notice of any default under the terms or conditions of the promissory note or mortgage, by sending the notice by certified mail to the address of the mortgaged property or such other address as the borrower may have designated in writing to the lender.

Minn. Stat. § 47.20, subd 8(3) (emphasis added). The mortgage in this case provides that, upon default, the lender "shall give notice to Borrower" specifying "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default . . . may result in acceleration of the sums secured by this Security Instrument and sale of the Property." (Wells Fargo App'x [Docket No. 16] at 5, ¶ 22.)

---

document. As those claims do not appear in the Amended Complaint, the Court does not discuss them here.

Plaintiffs argue that Wells Fargo was obliged to notify the current owners of the Property—Scanlon Sr.'s three sons—of default, as ownership of the Property passed to them upon their father's death. Wells Fargo argues that it was obligated to notify only the "borrower," Scanlon Sr., and that it therefore had no obligation to notify Plaintiffs of the default.

At this stage, neither side has fully discussed whether the term "borrower" as written in the contract or as referenced in Minnesota statute encompasses successors to the borrower, such as Plaintiffs. It seems, however, that since Plaintiffs never assumed the mortgage, they could not have properly been considered "the borrowers" under the plain language of the contract or Section 47.20. For this reason, the Court finds it unlikely that Plaintiffs will succeed in showing that Wells Fargo's notice of default was deficient.

### b. Foreclosure Notice

Plaintiffs also argue that Wells Fargo's notice of foreclosure was insufficient because only Scanlon Jr. received notice. Minn. Stat. § 580.03 states:

> Six weeks' published notice shall be given that such mortgage will be foreclosed by sale of the mortgaged premises or some part thereof, and at least four weeks before the appointed time of sale a copy of such notice shall be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises, if the same are actually occupied.

8

"[P]ersons who are not occupants of the premises are not entitled to notice of a foreclosure sale." Scott v. Wells Fargo Bank, N.A., Civ. No. 10-3368, 2011 WL 3837077, at *7 (D. Minn. Aug. 29, 2011).  The occupant of the Property, Scanlon Jr., has admitted that he received notice of the foreclosure sale.  There is little question, then, that Wells Fargo complied with Minnesota law by giving notice of the foreclosure to Scanlon Jr.  Plaintiffs cannot succeed in their claim that Wells Fargo's notice of foreclosure was deficient.

### 2. Constitutionality of Minnesota Foreclosure Laws

Plaintiffs argue that Minnesota's foreclosure laws violate their right to due process under the Minnesota and Federal Constitutions because they do not provide adequate notice or a hearing before foreclosure.  Courts have long held, however, that the statutes challenged by Plaintiffs do provide sufficient due process of law.  See, e.g., Guidarelli v. Lazaretti, 233 N.W.2d 890, 892 (Minn. 1975) (holding that Minnesota's foreclosure by advertisement law does not violate due process); Ostigaard v. Deutsche Bank Nat. Trust Co., Civ. No. 10-1557, 2011 WL 1641974, at *3 (D. Minn. May 2, 2011) (same); Sain v. Geske, Civ. No. 07-4203, 2008 WL 2811166, at *13 (D. Minn. July 17, 2008) (unpublished) (same).  Plaintiffs' constitutional claim is therefore unlikely to succeed.

Moreover, the Court doubts that Plaintiffs can succeed in showing the state action required for a claim under 42 U.S.C. § 1983.  See Sain, 2008 WL 2811166, at *13 (holding that bank that pursued foreclosure by advertisement did not act under the color of federal or state law).

For the foregoing reasons, the Court concludes that Plaintiffs have not made the requisite showing of irreparable harm, nor have they shown a likelihood of success on the merits.  Preliminary injunctive relief is therefore unwarranted and, accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order [Docket No. 7] is **DENIED**.


Dated:  January 5, 2012                                  s/ Michael J. Davis
                                                                                                     Michael J. Davis
                                                                                                     Chief Judge
                                                                                                      United States District Court