## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dennis D. Scanlon, Jr., Terrance D. Scanlon,
and Richard D. Scanlon,

       Plaintiffs,

v.

                                   **Memorandum of Law & Order**
                                   Civil No. 11-3128 (MJD/TNL)

Northwest Mortgage, Inc., and National
City Bank of Minneapolis,

       Defendants.

James George Roban, Roban Law Office, Counsel for Plaintiffs.

D. Charles Macdonald and Erin L. Hoffman, Faegre Baker Daniels LLP, Counsel for Defendant Wells Fargo Bank, N.A.

## I.      Introduction

This matter is before the court on Defendant Wells Fargo's Motion to Dismiss Plaintiffs' Amended Complaint.  [Docket No. 33.]  The Court heard oral argument on May 11, 2012.

## II.     Background

In 1970, Dennis Scanlon, Sr. ("Scanlon Sr.") and his wife bought a house in St. Paul, Minnesota ("property").  When his wife passed away in 1988, Scanlon

Sr. became the sole owner of the property.  In April 1996, National City Bank of

Minneapolis gave Scanlon Sr. a loan for $44,500.00 secured by a mortgage on the

property ("mortgage").  The loan and mortgage were later assigned to Defendant

Norwest Mortgage, Inc., now part of Defendant Wells Fargo Bank, N.A. ("Wells

Fargo").

When Scanlon Sr. died intestate in August 2010, the property

automatically passed to his sons—Plaintiffs Dennis D. Scanlon, Jr. ("Scanlon Jr."),

Terrance D. Scanlon, and Richard D. Scanlon.  See In re Beachside I Homeowners

Ass'n, 802 N.W. 2d 771, 774 (Minn. Ct. App. 2011) (explaining that Minnesota

law provides "automatic devolution of interest in property to the heirs of a

person who dies intestate without the need for the heirs to be determined by a

probate court").

Scanlon Jr. had lived at the property since birth and had been caretaker to

his mother and father.  After his father's death, Scanlon Jr. continued to live in

the home and made payments on the mortgage for the months of September,

October, November, and December 2010.  According to Scanlon Jr., he contacted

Wells Fargo in January 2011 to inquire about the mortgage.  He alleges that Wells

Fargo told him that "since [he] was not an Owner of the homestead, [Wells

Fargo] would not accept payments from [him]." (Scanlon Jr. Aff. [Docket No. 12] ¶ 13.) Scanlon Jr. stopped making payments at that time. Neither he nor his brothers made efforts to assume the mortgage or make additional payments.

Wells Fargo began default and foreclosure proceedings. Plaintiffs allege that they did not receive notice of default from Wells Fargo. Scanlon Jr., who lived at the property, received a notice of foreclosure from Wells Fargo, but his brothers, who live lived elsewhere, did not. In an effort to stop the foreclosure proceedings, Plaintiffs initiated the instant action in state court. Wells Fargo removed the case to this Court. Plaintiffs moved for preliminary injunctive relief to stop the foreclosure sale. The Court heard oral argument on that motion on November 11, 2011. The Court took the matter under advisement and ordered the parties to attend a settlement conference. Well Fargo voluntarily postponed the foreclosure sale for 60 days to allow additional time for the settlement conference, which was held on January 3, 2012. No settlement was reached.

On January 5, 2012, the Court denied Plaintiffs' request for preliminary injunctive relief, concluding that Plaintiffs had not made the requisite showings of irreparable harm and likelihood of success on the merits. Plaintiffs filed an Amended Complaint and now argue that the foreclosure is invalid for two

reasons:  First, Plaintiffs argue that Wells Fargo did not provide the notice

required to commence the foreclosure.  Second, Plaintiffs argue that Minnesota's

foreclosure by advertisement statute is unconstitutional.  As a remedy, Plaintiffs

request a declaratory judgment voiding the foreclosure and declaring the

foreclosure statute unconstitutional.  They also seek damages for the alleged

constitutional deprivation.  Now before the Court is Wells Fargo's motion to

dismiss Plaintiffs' Amended Complaint.

## III.    Discussion

### A.    Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

move the Court to dismiss a claim if, on the pleadings, a party has failed to state

a claim upon which relief may be granted.  In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  Thus, although a complaint need not include
> detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, Civil No. 07-1290 (DWF/SRN), 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

**B.    Plaintiffs' Notice-Related Claims**

Plaintiffs argue that Wells Fargo provided them insufficient notice because default notice was not sent to any of them, and notice of the foreclosure was sent only to Scanlon Jr.

**1.  Notice of Default**

The Mortgage Agreement at issue in this case provides that, upon default, "Lender shall give notice to Borrower" specifying "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default . . . may result in acceleration of the sums secured by this Security Instrument and sale of the Property." (Mortgage Agreement [Docket No. 35-2] ¶ 21.)

Plaintiffs argue that Wells Fargo was obliged under the Mortgage Agreement to notify the current owners of the property—Scanlon Sr.'s three sons—of default, as ownership of the property passed to them upon their father's death.  Wells Fargo argues that it was required to notify only the "Borrower," Scanlon Sr., and that it therefore had no obligation to notify Plaintiffs of the default.

Plaintiffs first contend that term "Borrower" should be read broadly to include successors in interest to the property.  They note that two paragraphs of the Mortgage Agreement reference the borrower's successors in interest. Paragraph 11 states that "[e]xtension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest."  Paragraph 12 states that "[t]he covenants and agreements of this Security Instruments shall bind and benefit the successor and assigns of Lender and Borrower. . . ."  Paragraph 21, which sets out the notice requirement at issue here, does not refer to successors in interest.

While Plaintiffs became Scanlon Sr.'s successors in interest as to the property upon his death, they did not succeed in his role as Borrower in the Mortgage Agreement.  As Wells Fargo points out, if Plaintiffs were correct that they automatically became "Borrowers" under the Mortgage Agreement upon their father's death, they would have been required to make payments on the mortgage.  Moreover, upon their nonpayment, Wells Fargo could have followed the rules set out for foreclosure by action under Minn. Stat. § 581 et seq.  That is, Wells Fargo could have filed an action directly against Plaintiffs to foreclose upon the property.  Wells Fargo also could have sought to recover any deficiencies from Plaintiffs and even reported the missed payments for inclusion on Plaintiffs' credit reports.  It is plain enough, however, that individuals who automatically succeed a decedent in a property interest do not automatically become personally liable for the debt secured by the property.

Plaintiffs further argue that if the term "Borrower" in the Mortgage Agreement is be construed to include only Scanlon Sr., then the term "Lender" in should be construed narrowly only to include the original mortgagor, National City Bank of Minneapolis.  This reasoning does not hold up upon examination of the Mortgage Agreement.  Paragraph 19 explicitly provides that "[t]he Note or a

partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower."  The Mortgage Agreement expressly contemplates a succession of interest from the original Lender to another entity <u>without notice to the Borrower</u>, but it does not contemplate or allow a similar unilateral succession of interest on the Borrower's side.

At bottom, the parties in this case simply succeeded in different types of interests.  There is little question that, by operation of law, Plaintiffs became owners of the property upon their father's death, <u>see</u> <u>In re Beachside I Homeowners Ass'n</u>, 802 N.W. at 774.  They did not, however, automatically succeed as "Borrowers" or otherwise become parties to the Mortgage Agreement between Scanlon Sr. and Wells Fargo.  Plaintiffs do not allege that they took any steps to assume their father's mortgage.  In contrast, each time the mortgage was sold or assigned, the assignee succeeded in the role of "Lender" in the Mortgage Agreement.

For these reasons, the Court concludes that Plaintiffs have not pled facts sufficient to show that any of them were "Borrowers" under the Mortgage Agreement and, therefore, that Wells Fargo was required to provide notice of default to any of them.

### 2.   Notice of Foreclosure

Plaintiffs further contend that Wells Fargo's notice of foreclosure was

insufficient because it was sent only to Scanlon Jr., the occupant of the property.

The Mortgage Agreement states that "[i]f Lender invokes the power of sale,

Lender shall cause a copy of a notice of sale to be served upon any person in

possession of the Property."  (Mortgage Agreement ¶ 21.)  Minn. Stat. § 580.03

states:

> Six weeks' published notice shall be given that such mortgage will
> be foreclosed by sale of the mortgaged premises or some part
> thereof, and at least four weeks before the appointed time of sale a
> copy of such notice shall be served in like manner as a summons in a
> civil action in the district court upon the person in possession of the
> mortgaged premises, if the same are actually occupied.

"[P]ersons who are not occupants of the premises are not entitled to notice of a

foreclosure sale."  Scott v. Wells Fargo Bank, N.A., Civ. No. 10-3368 (MJD/SER),

2011 WL 3837077, at *7 (D. Minn. Aug. 29, 2011).

Wells Fargo argues that it complied with Minnesota law, noting that

Plaintiffs have not alleged that the occupant of the property, Scanlon Jr., lacked

notice of the foreclosure sale.  In fact, in affidavits attached to their original

complaint, Plaintiffs admitted that Scanlon Jr. did receive such notice.  (See, e.g.,

Richard Scanlon Aff. [Docket No. 1-8] ¶ 8.)  There is no dispute that Wells Fargo

complied with Minnesota law by giving notice of the foreclosure to Scanlon Jr.

For that reason, Plaintiffs cannot succeed in their claim that Wells Fargo's notice

of foreclosure was deficient under Minnesota's foreclosure by advertisement

statute.

### C.      Plaintiffs' Constitutional Challenge

Plaintiffs argue that Wells Fargo's use of Minnesota's foreclosure by

advertisement statute violates their right to due process under the Minnesota

and United States Constitutions because the statute does not provide adequate

notice or a hearing before a foreclosure sale.  Wells Fargo responds that Plaintiffs'

constitutional claim cannot succeed because Plaintiffs cannot show the requisite

state action required to advance such a claim and also because Minnesota's

foreclosure by advertisement statute has been repeatedly upheld in similar

situations.

### 1.  State Action

To allege a violation of due process under the Fourteenth Amendment of

the United States Constitution or under the Minnesota Constitution, Plaintiffs

must show state action on the part of the party being sued.  See Warren v. Gov't

Nat'l Mortg. Ass'n, 611 F.2d 1229, 1232 (8th Cir. 1980); Sartori v. Harnischfeger

Corp., 432 N.W. 2d 448, 453 (Minn. 1988) ("The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States.").

Plaintiffs have not named any government entities or officials as defendants in their suit.  They instead argue that Wells Fargo's conduct — pursuing foreclosure by advertisement as set out in the Mortgage Agreement and in Minnesota law — itself amounts to state action.  Due process protections do not generally extend to alleged deprivations caused by private conduct. Private conduct may be considered state action "only if . . . there is such a 'close nexus between the State and the challenged action' that [the] seemingly private behavior 'may be fairly treated as that of the State itself.'"  Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (citations omitted). The fact that a state "has specifically authorized or approved" private conduct does not on its own create state action.  Jackson v. Metro. Edison Co., 419 U.S. 345, 354 (1974).

Plaintiffs face a difficult burden in showing state action here, as "[m]ost state courts considering due process challenges to non-judicial foreclosure statutes have upheld the procedure on the ground that there is no state action."

11

Vail v. Derwinski, 946 F.2d 589, 593 (8th Cir. 1991), amended in other part by 956 F.2d 812 (8th Cir. 1992); see Apao v. Bank of N.Y., 324 F.3d 1091, 1094 (9th Cir. 2003) (collecting cases finding no state action in non-judicial foreclosure).  As the Ninth Circuit noted in Apao, at least six circuits concluded in the 1970s that non-judicial foreclosure procedures similar to those at issue here did not implicate state action, and "[t]hose decisions have not been seriously questioned in the intervening years."  Id. at 1094-95.

Plaintiffs first argue that there is state action in this case because, in proceeding with foreclosure by advertisement, Wells Fargo is bound by the rules set out by the Minnesota legislature and courts.  The bare allegation that Wells Fargo must conform its conduct to state law is not sufficient to show state action such that due process protections are implicated.  A decision to merely follow or apply the law does not transform a private actor into a public one.  See Jackson, 419 U.S. at 354.

Plaintiffs also argue that the Ramsey County Sheriff's participation in the impending foreclosure scale amounts to joint action between the government and Wells Fargo.  To make out a joint action claim, a plaintiff must show that a private party was a "willing participant in joint action with the State or its

agents." <u>Miller v. Compton</u>, 122 F.3d 1094, 1098 (8th Cir. 1997) (citation omitted). At this stage, Plaintiffs must allege, "at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." <u>Id.</u>

This Court examined an argument similar to that advanced by Plaintiffs in <u>Sain v. Geske</u>, Civ. No. 07-4203 (MJD/AJB), 2008 WL 2811166, at *13 (D. Minn. July 17, 2008). In <u>Sain</u>, two private defendants had commenced a foreclosure by advertisement. The private defendants had followed Minnesota law, and a sheriff's sale was held. The plaintiff alleged a deprivation of due process, arguing that Wells Fargo was "in cahoots" with other government defendants— including the deputy sheriff who conducted the sale—also named in the suit. <u>Id.</u> at *13. This Court concluded that such an assertion could not support a finding of state action on the part of the private defendants.

Plaintiffs here have provided more details about the sheriff's potential involvement in the foreclosure sale than the plaintiff in <u>Sain</u> did, but the argument is essentially the same: Plaintiffs argue that Wells Fargo and the sheriff are engaged in joint action because the sheriff will play a role in administering the foreclosure sale. Like the plaintiff in <u>Sain</u>, Plaintiffs have failed

to allege facts indicating that there is a mutual understanding between Wells

Fargo and the sheriff.  There is simply no allegation of the close nexus between

Wells Fargo and the government required to make out a claim of state action in

this case.  Because Plaintiffs have not alleged the state action required for their

constitutional claims, those claims cannot succeed against Wells Fargo.

### 2.  Constitutional Deprivation

Even if Plaintiffs had alleged facts sufficient to show the requisite state

action, the Court concludes that they have not alleged a constitutional

deprivation arising from Wells Fargo's application of Minnesota's foreclosure by

advertisement statute.  Courts have long held that the statute challenged by

Plaintiffs provides sufficient due process of law to owners of foreclosed-upon

properties.  In Guidarelli v. Lazaretti, 233 N.W. 2d 890 (Minn. 1975), the plaintiff

argued that Minnesota's foreclosure by advertisement statute did not provide

adequate due process.  The Minnesota Supreme Court rejected that argument,

concluding that the statute did not raise due process concerns because it

"provides for 4 weeks' prior notice before sale, it permits the mortgagor to

redeem his property within either 6 months or 1 year and, most importantly, [the

mortgagor] is not deprived of the use and possession of the property prior to the

public foreclosure sale." Id. at 892 (citations omitted).  As Wells Fargo has noted,

Minnesota law allows the property owner to possess the property not only prior

to the foreclosure sale, as the Minnesota Supreme Court noted in Guidarelli, but

also after the sale, until the expiration of the redemption period.

Plaintiffs argue that Guidarelli did not address the question presented in

this case because "[Guidarelli] dealt with a claim of unjust enrichment AFTER a

mortgage sale[, and the Minnesota] Supreme Court did not rule on due process

BEFORE the mortgage sale."  (Pls.' Mem. in Opp. [Docket No. 46.] at 24.)  The

significance of Plaintiffs' distinction is unclear:  In Guidarelli, the "[p]laintiff . . .

claim[ed] that the statutory procedure for mortgage foreclosure by advertisement

violate[d] due process of law because a defaulting mortgager is not entitled to a

hearing prior to the sheriff's sale."  233 N.W. 2d at 892.   Plaintiffs have made the

same argument here.  The only difference is the timing of the lawsuit with

respect to the sheriff's sale—a difference which has no bearing on the

constitutionality of the procedures in question.

This Court has relied on Guidarelli numerous times, each time indicating

that Minnesota's foreclosure by advertisement statute is constitutional.  See Tully

v. Bank of Am., N.A., Civ. No. 10-4734 (DWF/JSM), 2011 WL 1882665, at *3 (D.

Minn. May 17, 2011); <u>Ostigaard v. Deutsche Bank Nat'l Trust Co.</u>, Civ. No. 10-

1557 (DSD/JSM), 2011 WL 1641974, at *3 (D. Minn. May 2, 2011); <u>Johnson v.</u>

<u>LaSalle Bank Nat'l Ass'n</u>, 663 F. Supp. 2d 747, 763 (D. Minn. 2009); <u>Sain</u>, 2008 WL

2811166, at *13.  Plaintiffs have not pointed to any cases which have come to a

different conclusion with respect to foreclosure by advertisement statutes, nor

have they attempted to distinguish this case from all of the previous cases which

have upheld the constitutionality of Minnesota's procedures in particular.

For all of these reasons, the Court concludes that Plaintiffs have not pled

sufficient facts to show a constitutional deprivation arising from Wells Fargo's

pursuit of a foreclosure by advertisement compliant with Minnesota law.

### D.     Remaining Issues:  "Quiet Title" Claim & Declaratory Judgment

Plaintiffs argue that their "claim to determine adverse claims" pursuant to

Minn. Stat. § 559.01 should survive even where they have pled no facts sufficient

to call into question the propriety of Wells Fargo's foreclosure by advertisement.

That section provides:

> Any person in possession of real property personally or through the
> person's tenant, or any other person having or claiming title to
> vacant or unoccupied real property, may bring an action against
> another who claims an estate or interest therein, or a lien thereon,
> adverse to the person bringing the action, for the purpose of

determining such adverse claim and the rights of the parties, respectively.

Minn. Stat. § 559.01.

Whatever the source of Plaintiffs' cause of action, the Federal Rules of Civil Procedure apply in this action.  <u>See</u> Fed. R. Civ. P. 2 ("There is one form of action—the civil action."); Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81.").  Claims upon which relief cannot be granted cannot survive Rule 12(b)(6) scrutiny.  No relief is available to Plaintiffs where the facts alleged do not indicate that Wells Fargo's foreclosure by advertisement is invalid.  <u>Cf.</u> <u>Welk v. GMAC Mort., LLC</u>, Civ. No. 11-2676 (PJS/JJK), 2012 WL 1035433, at *8 (D. Minn. Mar. 29, 2012) (concluding that "claim to determine adverse claims" which plaintiff has no "objectively reasonable basis for asserting" is frivolous under Rule 11).  It would make little sense for the Court to rule that Plaintiffs' substantive counts fail to state a claim upon which relief can be granted but that their "claim to determine adverse claims" may nonetheless survive.

Plaintiffs also seem to treat the declaratory judgment count in their Amended Complaint (Count II) as a separate, substantive claim.  A declaratory judgment is a remedy.  <u>See, e.g.</u>, <u>Onvoy, Inc. v. ALLETE, Inc.</u>, 736 N.W. 2d 611,

17

617-618 (Minn. 2007) (holding that declaratory judgment action may be maintained only where there is a justiciable controversy); <u>Buck v. Am. Airlines, Inc.</u>, 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201, "creates a remedy, not a cause of action").  In light of the Court's conclusion that Plaintiffs' substantive claims cannot succeed, they are left with a remedy in search of right.  Their declaratory judgment count must be dismissed along with the substantive counts.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Wells Fargo's Motion to Dismiss Plaintiffs' Amended Complaint [Docket No. 33] is **GRANTED**.

2. This action is **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  July 13, 2012                          s/ Michael J. Davis
                                               Michael J. Davis
                                               Chief Judge
                                               United States District Court

18